No. 66.—John B. Griffin, plaintiff in error, *vs.* The State of Georgia.

[1.] It is not error for the Court to tell triors, that they may find the person tried, competent for a Juror, even though he has formed, but not expressed, a decided opinion, as to the guilt or innocence of the accused.

[2.] The *voir dire* oath need not be *re*-administered to the Juror, when sent before triors to be examined.

[3.] "Take the evidence as it has been *read* to you, apply the law to it, and find your verdict accordingly", is not a proper charge to a Jury, in a criminal case.

[4.] In the argument before the Jury, the Solicitor General may take any place on the side of the State he prefers.

[5.] The matters respecting the expression of an opinion, by one of the Jurors, presented for a new trial, were insufficient for that purpose.

Murder, in Harris Superior Court. Tried before Judge Crawford, March Term, 1854.

Upon the trial of this cause, a Juror being placed on his *voire dire*, and pronounced competent, triors were demanded by the defendant. The Court charged the triors as follows: "if the Juror has, from rumor, formed but not expressed, any opinion as to the guilt or innocence of the prisoner, you may find him competent". This direction is assigned as error.

When the Juror was sent out with the triors, no other oath was administered to him, than that previously administered on his *voire dire.* This proceeding is also assigned as error.

The testimony being closed, the Court directed the brief of evidence, taken down by the direction of the Court, to be read to the Jury; and then charged them as follows: "Take the evidence as it has been read to you, apply the law to it, as I shall give it to you in charge, and find your verdict accordingly". This charge is assigned as error.

Counsel for defendant insisted, that the Solicitor General should make the concluding argument on the part of the State, and not assign his place to associate counsel. The Court refused so to direct, and this is assigned as error.

A motion was made for a new trial, on the ground that one of the Jurors, prior to his being empannelled as a Juror, had heard a part of the evidence delivered on oath, and had expressed an unfavorable opinion against the prisoner, to one S. S. Fouville, and one John McGee. The affidavit of prisoner stated, that two of his counsel had applied to Fouville to know if he would prove this fact, and that he said he would; but had evaded them and left the place; that he had sent for Mc-Gee, who lived ten miles absent, but the Bailiff returned, reporting McGee to be sick. Counsel insisted on continuing the motion for a new trial, till this evidence could be procured. The Juror filed his affidavit, stating that he heard none of the evidence on the former trial, except a single expression— "John", or "oh, John"—which he stated, when examined on his *voire dire*. That he had no recollection of ever expressing any opinion to Fouville or McGee; and that any such opinion had no influence, whatever, on his verdict. That when the Jury retired to make their verdict, he was one of the few Jurors who wavered between a verdict for manslaughter or murder.

The Court refused the motion for a new trial, and the motion to continue, and this decision is assigned as error.

WILLBORN, RAMSEY and WORRILL, for plaintiff in error.

Sol. Gen. BROWN and INGRAM, for defendant.

*By the Court.*—BENNING, J. delivering the opinion.

[1.] Was the charge of the Court to the triors, wrong?

It is argued for the plaintiff in error, that this charge amounts to telling the triors, that they might find the Juror competent, even if he had formed, but not expressed, a *decided* opinion, as to the guilt or innocence of the accused; and that amounting to as much as that, the charge is wrong, according to the decision of this Court, in *K. P. Boon vs. The State*, (1 *Kelly*, 619.)

The decision in that case was, "that the law is not chargea-

ble with the injustice of admitting a Juror to sit on the trial, who has formed and expressed a *decided* or *substantial* opinion on the merits of the case". "Formed *and expressed*", are the words. To tell the triors that a person might be competent for a Juror who had formed, but *not expressed*, a decided opinion, does not contravene this decision.

No reason was offered to justify the extending of this decision to the case of the bare formation, without the expression of a decided opinion. And we know of none which invites an extension of the decision in that direction.

[2.] When a Juror has been challenged for cause—been put upon his *voir dire* oath on that challenge, and has so answered the questions prescribed by the Act of 1843, on the subject, as to render himself competent, and one party still wishing to have the challenge further tried; that is, wishing to have it go before triors, demands such triors, and moves to have the Juror examined by such triors, is it necessary, before the Juror can be so examined by the triors, that the oath shall be *re-administered* to him?

It is not.

What is the oath as first administered? "You shall true answers make to such questions as shall be asked you by the Court, or its authority. You shall answer *any* questions asked you by the Court, or by *authority* of the Court".

In what proceeding is this oath administered? In a proceeding of challenge for cause, to a person presented as a Juror—a proceeding which may terminate, while it remains wholly with the Court, or which may not terminate there, but may have to go on to triors before it can terminate. In any case, however, it is all *one* proceeding.

Now, the person's oath is to answer *any* question that may be asked him on this proceeding—any that may be asked him, not only by the Court, but by *authority* of the Court.

The triors act under authority of the Court.

The oath, therefore, as thus first administered, is broad enough in its terms, to govern the person in his answers to questions put to him by the triors; why, then, should it be re-administered to

him, before he can be interrogated by the triors ? There does not seem to be any reason why it should. The Act does not require it. (*Cobb's Dig.* 843.) Practice is against it.

[3.] " Take the evidence as it has been *read* to you, apply the law to it as I shall give it to you in charge, and find your verdict accordingly". Was this charge to the Jury right ? It was not.

The evidence as *read* to the Jury, supposing it to be the very words of the witnesses, was not the *best* evidence. The words, as they went from the lip directly to the Jury, with their accompaniments of tone, emphasis, gesture—with their signs of bias, or indifference, intelligence or ignorance, attentiveness or inattentiveness, conscientiousness or non-conscientiousness, with all their circumstances of whatever kind, was better than the same words taken clean out of all their surroundings, and in a new voice, merely read to the Jury.

Better for another reason. What was *read* to the Jury, was no more than *hearsay*—the hearsay of the Court, not of the Jury. What the Judge, who took down, or caused to be taken down, what was read, heard, or thought he heard, the witnesses say. True, the witnesses were present to correct mistakes, if made. But the corrections, when made, were themselves only hearsay ; the same sort of hearsay of the Judge.

2. Again, if the Court can tell the Jury, take what I now read to you as evidence, and go by it, the Court can *make* the evidence, out and out, in any case; and if it can do that, it can render nugatory, trial by Jury, as established by law, viz : that sort of trial in which the right of the Jury to judge of the *fact*, is the most valued characteristic. The Court can say to the Jury, " this that I read to you—*this* is the *fact*". Now, there is no law which gives the Court so much power as this, over the fact in trials.

It is true, that the Penal Code of 1833, and also an Act of 1819, require the testimony to be taken down, " in cases where the party, if found guilty, would be subjected to confinement in the penitentiary, or to any greater punishment". (*Cobb's Dig.* 841, 859.) But this they require to be done for another

purpose, viz : to serve as a basis for the action of the repriev-
ing and pardoning power. The Act of 1819 says: "In all
cases of application for pardon or reprieve, a certified copy of
such evidence shall accompany such application".

[4.] There is no law, as far as we know, which makes it the
duty of the Solicitor General, when he has attorneys associated
with him, to take the conclusion, or any other particular place,
in the argument before the Jury. He may take whatever
place he prefers.

[5.] The motion for a new trial, as far as it rested on the
matters with respect to the expression of an opinion, by one of
the Jurors who sat on the trial, rested, even before those mat-
ters were rebutted, on very slight grounds.

Fouville, instead of swearing to his statement, "evaded"
the counsel for the accused, "and left the place". The
Bailiff returned without McGee, and without any affidavit, or
even unsworn message from him, reporting him sick. This
is all.

If there is any thing in it, whatever, it vanishes before the
affidavit of the Juror himself.

Upon the whole, it appears that the Court erred in none of
the decisions excepted to, but one, viz : the charge to the Jury
to take the evidence as *read* to them. For that error, how-
ever, a new trial ought to be had.