BENJAMIN F. DOZIER, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

[1.] On the trial of an indictment for murder, the mere omission by the Court to charge as to voluntary manslaughter, is not a ground for a new trial.

[2.] Malice is a "deliberate intention, unlawfully to take away the life of a fellow-creature."—BENNING J.

[3.] On the trial of an indictment for murder, the jury differed among themselves as to what a witness swore on a material point.

*Held*, that the witness, if at hand, ought to have been made to restate his evidence on the point; if not at hand, that what had been taken down by the Court in writing as his evidence on the point, ought to have been read to the jury.

Murder, in Muscogee. Tried before Judge WORRILL, November Term, 1858.

Dozier was put upon his trial for the murder of David Gunn, and found guilty.

Dozier vs. The State.

The defendant's counsel moved the Court for a new trial on the following grounds:

1st. Because the Court omitted altogether to charge the jury on the subject of voluntary manslaughter.

2d. Because the Court charged the jury " that every homicide is presumed to be malicious, and is, of course, murder, until the contrary appears; and the *onus* is on the defendant to prove the killing was of an inferior grade of homicide, or the jury must find him guilty of murder."

3d. Because the Court, in defining murder, said the word malice had a peculiar legal signification:—"It does not mean hatred, enmity, ill-will, malevolence, or anything of that sort. A man may kill another against whom he has no grudge or ill-will whatever, and the killing be with malice and be murder. For example, a man fires a pistol into a crowd of men and kills one he never saw before. This, in law, would be malice and be murder."

4th. Because when the jury returned for instructions, and said that they could not agree, because some of them thought that Elvira Wheeler testified that after Gunn struck Dozier, and after they had got into the yard, she ran to the door and cried out to them to quit; from which they inferred that Dozier had not had time for reflection. The Court told them that was a question of fact, and he could not assist them; and the counsel for the defendant asked that the witness might be sent for, or the brief of evidence referred to, to enable the jury to find a correct verdict, and the Court refused.

5th. Because the brief of evidence recorded is incorrect in an important thing: the remark of Elvira Wheeler referred to above, as is shown by her affidavit.

6th. Because in a difference between the prosecution and the defence, on a material fact, the defence prayed the Court for reference to the brief of evidence to settle the question, and the Court refused.

7th. Because the evidence, as taken down, was not read over to the witnesses for correction, if necessary.

8th. Because the principal witness, and only important one for the State, lived with, was regarded by herself and deceased as the wife of deceased, and so spoken of by deceased, under the promise of having the legal forms complied with as soon as they could afford it.

9th. Because of new testimony discovered since the trial, showing a peaceable disposition on the part of defendant, and a quarrelsome one on the part of deceased, and that defendant was industrious, and a hard working man.

10th. Because the verdict was not supported by the evidence.

### Brief of the evidence.

Deceased was at the house of witness, Elvira Wheeler, after supper. Dozier walked out and deceased said some very insulting things to him. Defendant heard him, came back and asked him what kind of jaw was that to use in his presence. Defendant stood outside and deceased sat in the door; and if that was what he had come for, he had better go home, as he wanted nothing to do with him. Deceased raised his arm and struck defendant three blows with his fist; saw no weapon in defendant's hand. They then went into the yard and she heard deceased say he was dead; she and defendant got a light, and deceased was dead. Defendant had a knife; had had it that night cutting beef for supper, and laid it down on the bench; had it before the difficulty; don't know whether it was on the bench during the difficulty or not. Saw no person present before or after. There was blood on the knife. Deceased was wounded on the neck and lip. They were friendly. Dozier rented the house in which she lived. Defendant had promised to marry her, and she expected him to do so; she considered herself his wife. About fifteen minutes elapsed after deceased struck defendant before deceased said he was dead. Defendant

came in the house and said he believed deceased was dead, and gave witness the knife.

*Wright*, the Coroner, testified that the wounds severed the large neck vein, and the knife fit the wound. Gunn was a feeble man, one hand almost useless, and defendant a stout man.

Another witness testified that defendant and E. Wheeler said there was no knife there; he was looking for one. Saw blood on Dozier, and signs of blood being washed out of his clothes. Defendant said it came from his finger; that he had cut his finger; the cut was trifling on his finger. Dozier was asked if he had on his own coat when he cut his finger, and he said yes; on pulling off his coat, blood was found on the back of his shirt. The knife was large.

The Court overruled the motion for new trial, and defendant's counsel excepted and assigns it as error.

JOHN A. JONES; E. W. MOISE by JOHN PEABODY, for plaintiff in error.

Solicitor General OLIVER, for defendant in error.

*By the Court.*—BENNING J. delivering the opinion.

Was the Court below right in overruling the motion for a new trial ? This is the question.

We think, that there is nothing in the first ground of the motion.

[1.] Does it follow from the Courts' failing to charge in respect to voluntary manslaughter, that the jury mistook the law of voluntary manslaughter, and mistook it to the prejudice of the accused? By no means. The jury were the judges of the law, as well as of the fact; and that the Judge decides *right*, is the presumption until the contrary be shown.

It does not appear, then, that this omission in the charge, did the accused any harm.

Such an omission, is not one of the things made grounds for a new trial, by the new trial Act of 1854. *Acts of* 1853–1854, 46.

We can perceive nothing exceptionable, in the second ground—and pass to the third.

[2.] The Court told the jury, that malice " does not mean hatred, enmity, ill-will, malevolence, or anything of that sort." This is undertaking to say, not what malice is, but what it is not; and, *perhaps,* what is said, considered in that view, may pass. The words, " or anything of that sort," are, however, extremely broad. It would certainly be safest to follow the Code.

" Express malice is that deliberate intention unlawfully to take away the life of a fellow-creature, which is manifested by external circumstances capable of proof."

" Malice shall be implied where no considerable provocation appears, and where all the circumstances of the killing show an abandoned and malignant heart." *Cobb,* 783.

It is deducible from these two sections of the Code that malice in the abstract, is, *intention*—is, a " deliberate intention, unlawfully to take away the life of a fellow-creature."

We pass from the third ground with these remarks.

The fourth ground is, we think, a good one.

[3.] The jury differed among themselves, as to what the main witness swore on an important point. They informed the Court of this difference. The usual course in such cases, has been, for the Court to require the witness, if at hand, to restate to the jury his evidence on the point; if the witness is not at hand, to read to the jury what has been taken down in writing as the evidence of the witness, on the point. This course, we think, has been in pursuance of the law. It complies with the great rule of evidence, that the best evidence which the nature of the case admits of, shall be required, and when produced, shall be received. It does not impose on any juror, the duty of surrendering a clear con-

viction as to what it was he heard from the mouth of the witness when the witness was testifying. This is a matter it leaves to him.

In *Griffin vs. The State* (15 *Ga.* 479) the charge to the jury was; "Take the evidence as it has been read to you," &c.; and this Court held the charge wrong. Why? Because the charge amounted to saying, that this "*read*" evidence was the *best* evidence—better than the evidence *heard* from the mouths of the witnesses. But holding this, was by no means holding, that such "read" evidence—that is, the evidence taken down by the Court—is not admissible as *secondary* evidence.

Supposing the fifth ground true in point of fact, it does not make a reason for a new trial.

The sixth ground is: "Because in a difference between the prosecution and the defence, on a material fact, the defence prayed the Court for reference to the brief of evidence, to settle the question, and the Court refused."

Such "a difference" between opposing counsel, if requiring to be settled at all, ought not to be settled in a different manner from that in which a similar difference among the jury would have to be settled. But we are not prepared to say, that there is any law which requires it to be settled at all. As long as there is no such difference among the jury, of what consequence is it, that there is such a difference between the opposing counsel? If the difference between these is shared in by the jury, they can make it known, and then the witness will be recalled, if at hand; if not, the manuscript of his evidence may be read.

The seventh ground is not a reason for granting a new trial. We think, however, that it is highly important, on every account, that the "evidence as taken down" ought to be "read over to the witnesses for correction"; and that every other means ought to be taken, to render such evidence as perfect as possible. Why, it is needless to specify.

VOL. XXVI.—11.

We do not mean to say, that a case is not conceivable in which, incorrectness in the evidence as taken down, might not become a ground for a new trial.

The husband is not a competent witness for or against the wife; nor the wife for or against the husband. But this rule does not extend to the case of a man and woman living together in a state of fornication. That the two *contemplate* marriage, can make no difference.

There is nothing then in the eighth ground.

The newly discovered evidence is a small matter any way; and it might have been discovered in time for the trial, by the use of any diligence.

There is nothing, then, in the ninth ground.

It is needless to express an opinion on the tenth, which is, that the verdict was contrary to the evidence.

New trial ordered on one ground.