GEO. C. EDWARDS v. THE STATE OF MISSISSIPPI.

1. CRIMINAL PRACTICE—JURY—RECORD.—Where the record in a capital case shows that the jury were "sworn," it will be presumed that they were properly sworn according to law.

2. SAME—ATTORNEYS.—It is within the discretion of the court, with the consent of the prosecuting officer, to allow the assistance of other counsel for the prosecution.

3. SAME—EVIDENCE.—The rejection of evidence being assigned for error, and the record not showing what the rejected evidence was, it will be presumed to have been properly rejected.

4. CRIMINAL LAW—MURDER.—Previous threats by the deceased against the life of the accused, alone, are no justification or excuse for the killing.

5. Practice—instructions to jury.—In capital cases, the court is not authorized to instruct the jury, except upon request.

6. Practice—judgment—sentence.—It is indispensable that, before pronouncing sentence in capital felonies, the court shall allow the defendant to state, if he has anything to state, why sentence of the law should not be pronounced against him. But where the record shows that the court, "after hearing the defendant," proceeded to pronounce sentence, etc., this is held sufficient.

Error to the circuit court of Noxubee county. Orr, J.

A statement of the case appears in the opinion of the court.

*James T. Harrison,* for plaintiff in error.

I. An attorney-at-law must be regularly employed before he is authorized to appear in a cause, and must produce his power or authority when disputed by the adverse party. 4 How. (Miss.) 333; 27 Miss. 567; *Ex parte* Gillespie, 3 Yerg. 325; the State v. Hayes, 23 Mo. 293; Douglass v. the State, 6 Yerg. 528, 529; 5 ib. 361; 2 Wash. C. C. 429. The record shows that there was "no prosecutor," and no appointment by the court. Counsel appeared without the request of any one, so far as the record shows, and who their client was they were unable to tell. Courts of justice ought not to be open like tournaments, for errant knights to enter and tilt at pleasure. Com. v. Knapp, 10 Pick. 482. The law does not countenance the officious intermeddling of strangers, who start with the presumption of guilt, and do not seek to represent public justice, but are only self-constituted ministers of private vengeance. Maintenance is an indictable offense, being an officious intermeddling in a suit that in no wise belongs to one, by maintaining or assisting either party with money or otherwise, to prosecute or defend it. 4 Black. Com. 134; see 1 Hawk. P. C. 83; 3 Am. Cr. Law, 138, note; 3 Archb. Cr. Pr. & Pl. (Waterman), 630, 634; 2 Bish. Cr. Law, §§ 127, 128.

II. As presented by the court in its instructions to the

jury, the case was either one of murder or one of justifiable homicide. The degree of manslaughter, which must be always considered on the trial of an indictment for murder, was wholly ignored. See Sullivan v. the People, 1 Park. Cr. Cas. 350, 351, 359 ; the People v. Enoch, 13 Wend. 159 ; White's Case, 24 ib. 558, 569, 581 ; 2 Park. Cr. Cas. 623, 624 ; Barb. Cr. Tr. 26, 54 ; the People v. Clark, 3 Selden, 385 ; the People v. Robinson, 2 Park. Cr. Cas. 235, 301 ; Whart. on Hom. 41, 42, 45 ; Wilson v. the People, 4 Park. Cr. Cas. 619 ; 4 Greene (Iowa), 500 ; the People v. Patter, 5 Mich. (1 Cooley), 1–9 ; 1 Black. Com. 199 ; 1 Hale, P. C. 473, 474 ; 1 East P. C. 231, 235, 236, 272, 273 ; Whart. on Hom. 218, 226, 229 ; 5 Ga. 137 ; 11 Humph. 200 ; 5 Yerg. 459 ; Foster P. C. 263, 264, 298 ; U. S. v. Travis ; 2 Wheel. Cr. Cas. 507 ; Rev. Code of 1871, §§ 2638–9 ; Golden v. the State, 25 Ga. 251.

The defendant may show threats or other circumstances tending to make a man of his character believe his life was in danger. Whart. on Hom. 217, 218, 229 ; 5 Ga. 85 ; 15 B. Mon. 539, 546 ; 1 Gray, 38 ; 22 Ala. 39, 42 ; 23 ib. 28 ; 33 ib. 380 ; 1 Arch. Cr. Pr. & Pl. (Waterman, 5th ed.) 901, 902, 797. The defendant was only a boy of nineteen years. There was no express or actual malice. But where fresh provocation occurs between preconceived malice and death, it ought clearly to appear that the killing was upon the antecedent malice. Whart. Am. Cr. Law (4th ed.), 955, 979 ; Whart. on Hom. 198 ; 4 Black. Com. 198, 200 ; Foster P. C. 68 ; 1 Hale P. C. 479 ; 2 Jones (N. C.) 251, 253, 254 ; Golden v. the State, 25 Ga. 532.

Counsel commented at length on the evidence and charges of the court to the jury, citing 3 Greenl. Ev. 29; et seq. ; 4 Black. Com. 355, note.

III. The jurors were not sworn; the name of no juror appears in the record; and the jury was organized in a manner unauthorized by law. Either of these

errors was a sufficient ground for a new trial. Beal v.
Campbell, 1 How. (Miss.) 24; Wolfe v. Martin, ib. 30;
ib. 497; 4 ib. 263; Dyson v. the State, 26 Miss. 362;
Price v. the State, 27 ib. 283; Windham v. Williams,
27 ib. 313; 1 Archb. Cr. Pr. & Pl. (Waterman), 541,
542; 1 Greenl. Ev. 106; 2 Eng. (Ark.) 59; 5 Ala 666;
10 Tex. 288.

IV. There is no sufficient judgment of the court. 1
Chitty Cr. Law, 701; 1 Barn. & Cres. 711; Baker v.
the State, 2 Ark. 491; Scott v. Burton, 6 Tex. 322; 1
Chit. Cr. Law, 701; 4 Black. Com., appendix, 4.

V. It is always indispensable that the defendant be
asked if he has anything to say why the judgment of
the court should not be pronounced against him, and
that this appear in the record. James v. the State, 2
Morris Cr. Cas. 1741; 1 Chit. Cr. Law, 699, 701, 720; 43
Ala. 24; 1 Park. Cr. Cas. 474, 476; Barb Cr. Tr. 330;
1 Arch. Cr. Pr. & Pl. (Waterman), 674, 676; 2 Hale P.
C. 217; 1 Ga. 253; 2 Zab. 212.

VI. The jury were guilty of gross misbehavior, sep-
aration, playing cards, etc. Woods v. the State, 43
Miss. 361; 4 How. (Miss.) 187; 26 Miss. 83.

*J. S. Morris,* attorney-general.

1. The appearance of special counsel to assist the
prosecuting officer, or the professional services of such
special counsel, with the approbation of the court and
district attorney, is no ground of error. 1 Bish. Cr. Pr.
§§ 281–283 (2d ed. 1872) and numerous adjudged cases
there cited; Bird v. the State, Morris' State Cas. 73.

2. The instructions to the jury on both sides cover
every possible aspect of the law and evidence of the
case. Taken as a whole, they are favorable to the ac-
cused. Monk v. State, Morris' State Cas. 1100 (36
Miss. 77); Josephine v. State, ib. 1439 (39 Miss. 613);
Durrah v. the State, ib. 1688 (44 Miss. 789); Head v.
State, ib. 1700 (44 Miss. 731). Tested by the general

rules laid down in these cases, there is no error in the instructions embodied in this record.

3. The record shows, distinctly and explicitly, that the jury which tried the prisoner ·was selected from the special *venire,* from the regular panel and from the by-standers; their names are all given; and they are shown to have been " elected, tried, empanelled, sworn, and charged according to law."    State v. Cady, 1 Morris' State Cas. 107 (3 How. Miss. 27); McCarty v. State, ib. 705; Dyson v. State, ib. 710.    The statute renders the laws regulating the mode of empanelling all juries, directory, merely, and this applies alike to civil and criminal cases.    See Head's case, cited above.

4. Upon the question of misconduct of the jury, see Browning v. the State, Morris' State Cas. 991; Ned and Taylor v. State, ib. 1051; Pope & Jacobs v. State, ib. 1146; Caleb v. the State, ib. 1190.    The attempt, however, to assail the verdict on this ground was a told failure.

5. The record affirms distinctly that after the motion for a new trial was overruled, thereupon " the court, after hearing the defendant, proceeded to pronounce sentence," etc.    Grady v. State, 11 Ga. 253.

But if not, all that is necessary in any event, is to remand the prisoner for the proper judgment and sentence.    Easterling v. the State, Morris' State Cas. 1086; Wharton v. State, ib. 1527.

TARBELL, J.:

The plaintiff in error was indicted, tried and convicted in the circuit court of Noxubee county, of the murder of Patrick Brooks.    The homicide occurred in November, 1871, and the trial was had in May, 1872. A writ of error was prosecuted to have the proceedings on the trial reviewed by this court.    We have minutely. examined the record, and fully considered the arguments of counsel.    In our view of this case, a brief

answer only is required to the several assignments of error.

1. On motion of the accused, a special *venire* of seventy-five was ordered by the court, and drawn in his presence, the names so drawn being given in full. In the record of the trial it is stated that " the special *venire* being exhausted, without a jury being empanelled from those summoned and in attendance, the court proceeded to make up the jury from the regular panel, which had been elected, empanelled, sworn and charged, and the bystanders, when the following named persons were chosen, to wit : " Then follows the names of the jurors for the trial, who, it is stated, " were elected, tried, empanelled, sworn and charged according to law." The trial then proceeded without objection to this jury, or to the mode or manner of its selection, or other objection thereto of any kind.

The first assignment of error alleges that the accused " was not tried by a lawful jury ; that he was not tried according to law ; that he was not tried by a jury of good and lawful men, or by persons sworn according to law, or at all ; or by any juror or jurors known to the record ; that the names of the supposititious jurors are suppressed or concealed in the record, and were made up in a manner unknown to the law." On the contrary, the selection of the jury for the trial seems to have been made strictly according to law. Code 1871, § 2759. The only possible omission we can discover in the record is, that the names of the jurors on the regular panel, and the bystanders summoned and rejected, if any such, are not given in full. We have seen that the names of the seventy-five drawn on the special *venire*, and the names of the jury empanelled for the trial, are all given. We can conceive no error in the omission of the others. But no objection was made at the time, and, if error, is cured by Code of 1871, § 2843. The record says the jury for the trial were " sworn,"

and the presumption is, the legal oath was administered. So held, repeatedly in this state. Dyson v. the State, 26 Miss. 362; Chase v. the State, 46 ib. 683. This assignment is not well taken.

2. With the assent of the district attorney, and the approval of the court, other counsel were associated with the district attorney in the prosecution. To this the accused formally objected and excepted. This constitutes the second assignment of error, which we hold to be untenable. 1 Bish. Cr. Pr. (2d ed.) §§ 998, 1000; 6 Gratt. 684; 1 S. & P. 208; 2 Wal. Jr. 139; 2 Cush. 582; 10 Pick. 477; 9 ib. 496; 8 Gray, 501; 10 Yerg. 529; 15 Ga. 476; 16 Ohio, 364; 26 Cal. 65. Indeed, this question is in this state *res judicata*. In Byrd v. the State, 1 How. 247, the district attorney, after getting the case before the court, was permitted to retire altogether therefrom, and submit its management wholly to another. The views of the court in that case amply embrace the one at bar. And in other states counsel are frequenty associated with the district attorney in the prosecution of criminals, with the approbation of the presiding judge, in whose discretion the doctrine of the cases properly adjudge it to rest.

3. The third assignment alleges that "the court erred as to the law, in excluding proper evidence, and in the instructions and charges to the jury." We have carefully examined the record, and find that no evidence was excluded, but that the examination was unrestricted, leaving no fact bearing upon the intercourse between the accused and deceased, on the day of the killing and prior thereto, undeveloped; and this without question or objection on either side. After, however, the examination and cross-examination of the witnesses for the prosecution and defense, and of witnesses on both sides in support and rebuttal, other witnesses in behalf of the defense in rebuttal of one of the witness for the state were called, to whose exami-

nation the prosecution objected, and the objection was sustained. The evidence proposed by these witnesses is not given. We cannot ascertain, therefore, from the record, whether the action of the court worked an injustice to the accused. As it is not referred to in the argument of counsel, we infer it to have been a case within the discretion of the court, or of no importance. We see no error in this; none being made to appear in the record.

4. The fourth and fifth assignments assail the verdict as contrary to law and the evidence. We regret, for the sake of humanity, to feel that the verdict was a just one upon the facts. Previous threats by the deceased upon the life of the accused were shown, but upon the day and at the time of the homicide, there was not even apparent danger to the latter, or of an attempt or design to carry such prior threats into execution. Instantly, upon the killing, the person of the deceased was searched, and not even a common pocket-knife found thereon. On the way to jail after his arrest, the accused, referring to the killing, expressed the hope that he had done it well. The theory of the defense, on the trial, was, that the homicide was justifiable. Undoubtedly the accused shot the deceased under the popular delusion, that for threats to take life, the party threatened may arm himself and shoot down at sight the one so threatening. This fatal delusion cannot be too soon dispelled. The instructions of the court to the jury are numerous on both sides, drawn with skill and ability, and given without alteration or modification. The charges, like the trial, proceed upon the idea that the killing was murder or justifiable homicide. We find the charges to have been decidedly favorable to the defense. The jury, upon the fullest development of the facts, at and before the killing, and upon full and fair instructions, most favorable to the accused, rendered a verdict of guilty. In view of the

testimony they could not have done otherwise, except at the expense of their own perjury.

It is here urged by counsel, and for the first time, as far as the record shows, that the court ought to have submitted to the jury the proposition, that they might consider whether the homicide was not manslaughter. The court was not requested to give such an instruction. Even the attention of the court does not appear to have been called to this point. The proposition was not involved in the theory of either the prosecution or the defense. And, even if warranted by the facts, the court was not authorized to instruct, except on request. Code of 1871, § 643. The question of malice was directly involved, and propounded in the instructions, but the facts do not present the view now urged by counsel. The homicide, mirrored in the record, more than completes the definition of murder in § 2628, Code of 1871. According to the facts presented in the bill of exceptions, " the killing" was not only " done with a deliberate design to effect the death of the person killed," but it was brutal and cowardly. The extreme penalty of the law can alone arrest such barbarities. But, the conclusive argument is, this is not a case of " sudden passion," within § 2639, Code of 1871. Bad feeling had existed between these parties, accused and deceased, for months. On the fatal day, they had exchanged angry words on the streets. Passing from thence into a drinking saloon, foul language was renewed, when the accused fired three shots at the deceased, killing him instantly, afterwards hoping the killing was well done. Evidently the shooting was with a " deliberate design" to effect death ; and so the case is within § 2628, Code, *supra*.

5. The sixth ground of error charges that the jury separated, misbehaved, " and did not return their supposed verdict in the custody of an officer, or in a lawful manner." In support of the motion for a new trial, an

attempt was made to establish the separation and misconduct of the jury, but this effort was wholly broken down. Not a shadow of this charge was left after its examination. The eighth allegation of error, which is as follows: "That no lawful verdict was rendered or returned into court," may be considered with the latter clause of the sixth. The record states, that after the arguments of counsel and the instructions of the court, "the jury retired under the charge of the proper officers to consider their verdict." Further along the record states that "then came" the district attorney, "and also came George C. Edwards, the defendant, in his own proper person, and also the jury which had been elected, empannelled, charged and sworn in this case to try the issues joined, and which had been kept together by the proper officer, the sheriff, returned into open court, in the presence of the defendant, the following verdict, to wit: 'We, the jury, find the defendant guilty as charged in the bill of indictment.'" Clearly, the jury retired, deliberated and returned into court to deliver their verdict in charge of a proper officer. We are unable to discover any error in this part of the record; and, besides, this point was not presented to the court below.

6. The ninth assignment of error avers, "that no judgment of the court was rendered, and no legal sentence pronounced." After reciting that the motion for a new trial was overruled, the record continues: "And thereupon the court, after hearing the defendant, proceeded to pronounce sentence, which was, that the said George C. Edwards be remanded to jail of Noxubee county, in said state, there to be confined until Friday, the 28th day of June, 1872, and on that day to be taken by the sheriff to the place of execution, between the hours of 10 o'clock A. M. and 2 P. M., and there to be hung by the neck until he is dead." Although not as full and formal as the common laws forms of judgments, its informality is not fatal nor prejudicial to the defend-

ant. But, like several other allegations of error, the attention of the court was not called to this matter on the trial.

The tenth assignment avers, " that the defendant was not asked, if he had anything to say why the judgment of death should not be pronounced upon him." The record states that the court, " after hearing the defendant," proceeded to pronounce sentence. While this statement is brief and informal, we must understand from this entry, that the accused was in fact afforded the opportunity which the law holds inviolate, to state why sentence ought not to be pronounced upon him. At that stage of the trial, he could consistently be heard upon no other subject. And, besides, the very intelligent court before which he was tried, forbids the supposition or probability of the neglect of this duty. The brevity of the entry is no doubt the fault of the clerk, but it undoubtedly answers the point raised. And this is another point to which the attention of the court below was not invited.

By way of admonition to officials, we observe that a full and distinct statement of this, as of every other material fact, in the progress of a trial, especially in cases of felony, is indispensable to the rights of parties and the administration of justice. Courts and district attorneys cannot look too closely to the entries and records of the clerks. The proceedings subsequent to the verdict appear to have conformed to the Code.

7. The motion for a new trial was upon the following grounds: " 1. The jury decided contrary to law; 2. The jury decided contrary to the evidence; 3. The court erred in giving the charges for the state, and in other matters; 4. The jury empanelled were guilty of misconduct, or some of them, and that the defendant was not tried by a fair, impartial and unprejudiced jury." The denial of this motion is the basis of the seventh assignment of error. The several points on which this

motion is made have already been sufficiently considered. The facts are briefly these: The accused was a policeman of Macon, and had had occasion sometime prior to the shooting to arrest and imprison the deceased for drunkenness. On the day of the homicide, the parties met on the street, and though the deceased applied vulgar epithets to the accused, no violence was threatened or indicated by either. The parties met a second time on that day in a drinking saloon, when the deceased again indulged in abuse of accused, but without threats or acts of violence. Almost immediately, however, the accused shot the deceased, firing three shots, and killing him instantly. The person of deceased was searched for weapons, but none were found on him, not even a pocket knife. After his arrest, the accused expressed his satisfaction, and hoped the killing was well done. Prior threats of the deceased upon the life of the accused were shown, and also a subsequent reconciliation. At the moment of the killing there was not even apparent danger to the accused. The facts were fully developed, without objection or exception. The instructions are numerous, impartial and fair, yet favorable to the accused. The trial was evidently conducted with prudence and with a strict adherence to the rules of law and justice. The record, though exceptionally good, is not as perfect as it ought to be. If there are errors, they are so slight as not to have influenced the result. The action of the court in overruling the motion for a new trial is approved.

The judgment is affirmed, and the sentence of the court will be executed by the sheriff of Noxubee county on Friday, the 7th day of March next, 1873, between the hours of 10 o'clock A. M. and 2 o'clock P. M. of that day.