## BAILEY *vs.* THE STATE OF GEORGIA.

1. There was no error in charging, in a criminal case, that it was necessary to lay before the jury certain rules of law, that they might apply the evidence delivered from the stand to such rules, and determine, from the law as given in charge by the judge and the testimony of the witnesses, of what crime defendant was guilty, if guilty at all. If defendant's counsel desired a more specific charge, to the effect that the jury were judges of the law and facts, it should have been asked.

2. To complete the crime of murder, it is not necessary that the deliberate intention to take life should exist for any particular length of time before the killing. If it entered the mind of the slayer a moment before he fired the shot, it is sufficient. It is deliberate intention at the time he makes up his mind to shoot, and if it exists only for that length of time, it is sufficiently long.

(*a.*) Legal malice is not ill will or hatred. It is an unlawful intention to kill, without justification or mitigation; and it is not necessary for that intention to exist for any length of time before the killing.

3. There was nothing in the charge of the court on the subject of the insufficiency of provocation by words, menaces, threats or contemptuous gestures, to free the slayer from the guilt of murder, that could be construed into an expression of opinion by the court.

(*a.*) Nor was undue and hurtful prominence given to this portion of the charge by the fact that the presiding judge thought proper to say this, not only to the jury, but to the "people out there," (the spectators,) "under the solemn sanction of his oath," or in the addition that " he wished the people of the county to understand that nothing a man could be called would authorize him to take life." If error at all, no harm was done to defendant thereby which would require a new trial.

4. Construed together, the charge of the court was quite as favorable to the defendant as he could have asked, if indeed not more favorable than the law authorized.

(*a.*) The making of threats by the deceased to injure the defendant in some way, would not constitute the deceased the assailant or make such a case of necessity under the law as would justify the killing. Threats to hurt or injure the defendant in some way do not make the danger so urgent and pressing at the time of the killing as to render the killing absolutely necessary to save the slayer's own life.

5. The defendant has had a fair and impartial trial, the law has been most benignantly administered, and the evidence fully sustains the verdict.

March 27 1883.

Criminal Law. Charge of Court. Practice in Superior Court. New Trial. Before Judge SIMMONS.. Bibb Superior Court. October Term, 1882.

Bailey was indicted for murder. On the trial, the evidence for the state showed, in brief, the following facts: Tatum, the deceased, kept a bar and store. There was a society meeting in progress upstairs over the store, and Bailey was in attendance upon it. He came down and gave Tatum a dollar to be changed. The latter told him to come back into the bar-room and get the change. Before the change was given, some one called the attention of Tatum to the front, and he asked Bailey to wait on him until he attended to his customers. He then went forward, leaving Bailey in the bar-room. When he returned, he stated that one dollar and seventy-five cents had been taken out of the drawer, and no one had been in there at that time but Bailey. He also declined to give any change until he found the missing money. Bailey insisted upon having his change, and Tatum refused to give it. Finally Tatum stated that he would go upstairs and get a five dollar bill changed in order to stop the fuss. Each agreed to hush, but as Tatum started towards the door, Bailey began quarreling again, and finally stepped between Tatum and the door, and as Tatum turned, shot him, causing death.

No witness testified to seeing any weapon about Tatum or in the store. The prisoner relied upon his statement, and in it asserted that Tatum had cursed and reviled him, and finally stretched out his hand to get a pistol which was lying upon one of the shelves, and as his hand reached the pistol, defendant shot him.

The jury found the defendant guilty. He moved for a new trial, on the following among other grounds:

(1.) Because the court charged as follows: " It is necessary for me to give you certain rules in charge, that you may apply the evidence that has been delivered from the stand under oath to those rules, and determine from the

law which I give you, and the testimony of the witnesses, of what crime this man is guilty, if he is guilty at all."

(2.) Because the court erred in the following charge to the jury in regard to the intention to kill: "It is not necessary, however, that this deliberate intention should exist for any particular length of time before the killing. If it enters the mind of the slayer the moment before he fires the shot, that is sufficient. That is deliberate intention at the time he makes up his mind to shoot and shoots. If it is only that long, it is sufficient in the law."

(3.) Because the court erred in the following charge to the jury: "Now you remember the Code says provocations by words, threats, contemptuous gestures, shall not be sufficient to reduce the crime from murder to manslaughter. I wish to say to this jury and the people out there that the law of Georgia is, that no words that a man can say to another, no menaces, no contemptuous gestures, that he can make towards another, will be sufficient to reduce the crime of murder to manslaughter. I say this under the solemnity of my oath, and I wish the people of this county to understand it, that nothing you can call a man authorizes that man to take life." [The following note was appended by Judge Simmons to the above ground:

"Homicides have been frequent in this county. The general idea has been that a man had a right to kill for words. Counsel for the prisoner had argued to the jury that they were the judges of the law as well as the facts, and he asserted positively to the jury that the prisoner had the right to take life because the deceased had called him a damned son of a bitch. The court room was crowded with ignorant colored people. I desired to correct the impression made on their minds by the able counsel, as well as the minds of the jury. Hence the charge in the third ground."]

(4.) Because the court failed to charge the jury that they were the judges of the law, as well as the facts, in criminal cases.

(5.) Because the court erred in charging the jury as follows: "But I charge you that no motion that a man can make, throwing his hand behind him or putting it upon a

shelf to get a pistol, will justify a man in shooting him, unless the circumstances show that the man who was making that motion presently intended to shoot the slayer —to shoot John."

The motion was overruled, and defendant excepted.

THOMAS WILLINGHAM; J. H. HALL, for plaintiff in error.

JOHN L. HARDEMAN, solicitor general; C. ANDERSON, attorney general, by JACKSON & KING, for the state.

HALL, Justice.

1. The court committed no error in charging the jury that it was necessary to lay before them certain rules of law, that they might apply the evidence delivered from the stand to such rules, and determine from the law, as given in charge by the judge, and the testimony of the witnesses, of what crime the defendant was guilty, if guilty at all. It is true that he does not state to them in precise terms, though he does so inferentially, that they are judges of the law and fact; but if the defendant had desired this latter charge, or if he was not satisfied with the statement of the law in that respect, he should have requested a more specific and precise charge upon the subject. This he failed to do, and it is now too late to take advantage of this omission. 64 *Ga.*, 318; 28 *Ib.*, 200; *Wilson vs. The State,* 69 *Ga.*, 224.

2. There was no error in the charge that 'it is not necessary that the deliberate intention to take life should exist for any particular length of time before the killing; that, if it enters the mind of the slayer the moment before he fires the shot, that is sufficient; it is deliberate, intentional, at the time he makes up his mind to shoot, and if it exists only that length of time, it is sufficient in law.' This statement of the law of malice aforethought, has been too often recognized by this court to admit of question or doubt, and is subject to no modification or qualification whatever. 3 *Ga.*, 326; 11 *Ib.*, 615. Nor can we conceive

how error can be predicated of this instruction to the jury, that " malice is not ill-will or hatred, as most people suppose it to be.  It is an unlawful intention to kill, without justification, or mitigation, and it is not necessary for that intention to exist any length of time before the killing." 26 *Ga.*, 156; *Ib.*, 276; 29 *Ib.*, 607.

3. There was nothing in the court's charge to the jury upon the subject of provocation by words, menaces, threats, or contemptuous gestures, being insufficient to free the person killing from the guilt and crime of murder, that could be tortured into an intimation of opinion, as was supposed by counsel for plaintiff in error, that such was the proof in this case.   Nor can we conclude with them, that undue and hurtful prominence was given to this portion of the charge by the fact that the presiding judge thought proper to say this, not only to the jury, but to the " people out there," *i. e.*, the spectators, " under the solemn sanction of his oath "; or in the addition that " he wished the people of the county to understand that nothing a man could be called would authorize him to take life."  In justification of his course, the cautious, experienced and able judge who tried this case says the idea had been prevalent that a man had a right to kill for words; that the counsel insisted, before the jury, that they were the judges of the law and fact, and that the prisoner had the right to take life, because the deceased had called him a d—d son of a b—ch ; that at the time of these utterances, the court-room was crowded with ignorant colored people, and hence the admonition was deemed proper to correct a prevalent, pernicious and fatal error that might otherwise lead to lawlessness and bloodshed, upon the slightest provocation.   It must be borne in mind that the defendant and deceased both belonged to the class of persons referred to, a class that can scarcely be reached by any other form of admonition than that adopted.  His honor rightly thought it his duty to exert his influence for the prevention of crime.  This is the main object of all punishment,

and it is certainly more in accord with the humane spirit of our law to prevent the commission of offences than to impose penalties to that end after they have been committed. The course pursued on this occasion was unusual, and to that extent, perhaps, may have been irregular; but the circumstances attending the trial, and the state of feeling and opinion developed, it is to be hoped, were likewise unusual, if not exceptional. In delivering the opinion in Malone's case, 49 *Ga.*, 218, Warner, C. J., said: "This court will avail itself of the present occasion to announce to the public from this bench, with all the emphasis which its judgment can impart, that provocation by words, threats, menaces, or contemptuous gestures will, in no case, be sufficient to free a person who kills another by shooting him, from the guilt and crime of murder. The law so declares, and it is the imperative duty of the court so to administer it, for the protection of society and human life. Mere words, threats, menaces or contemptuous gestures, are no considerable provocation, in the eye of the law, and, therefore, malice shall be implied." A solemn warning, to which this present bench would, if it were possible, impart increased force and emphasis. See, also, Roberts' case, 65 *Ib.*, 430.

The admonition to the bystanders, if error at all, did not impose any additional burthen upon the defendant, invaded none of his rights, withheld from him no privilege to which he was entitled under the law, and, therefore, worked no hurt which could justify the award of a new trial. 42 *Ga.*, 609; 59 *Ib.*, 189.

4. Nothing had been said in this case by any witness, save by the defendant in his unsworn statement to the jury, about any attempt upon the part of the deceased to get a pistol before the shooting, or about his reaching up to the shelf after one; and this statement of the defendant was contradicted by a witness introduced by the state. The judge charged the law as to the effect of the prisoner's statement as evidence, and charged, in addition, that if de-

ceased had a pistol in his hand, and was attempting to use it, or if one was lying near by, and deceased was attempting to get it from the shelf, or elsewhere, with the manifest intention to use it at that time, then defendant would be authorized to shoot to save himself. Thus far the charge was satisfactory to defendant, but to what follows in immediate connection he excepted, viz: " But I charge you that no motion a man can make, throwing his hand behind him, or putting it upon a shelf to get a pistol, will justify another in shooting him, unless the circumstances show that the man who was making that motion presently intended to shoot the slayer—to shoot John " (the prisoner). Taken in connection with what immediately follows, this charge, if not altogether correct, is more favorable to the defendant than he could have asked under the law. The jury were instructed that these were questions which the defendant must decide for himself, and must decide them in accordance with the law and facts, and it depended altogether upon these whether he would be justifiable or not; that if deceased had a pistol in his hand, and from his appearance or declarations, or things of that sort, he was going to use it, the defendant need not wait until he was shot, but could, under those circumstances, shoot first; but he must be sure, when he did shoot, that the law would justify him,—in other words, that the actions and declarations of the deceased tended to show that it was his purpose to shoot the defendant, unless the defendant first shot him; that the defendant must show that the circumstances were sufficient to excite the fears of a reasonable man, that unless he shot first, the deceased would shoot him; if they show that, then he would be justifiable, otherwise he would not. The court then read to the jury §4333 of the Code: " If a person kill another in his defence, it must appear that the danger was so urgent and pressing at the time of the killing, that in order to save his own life, the killing of the other was absolutely necessary; and it must appear also, that the person killed was the assailant, or

that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given;" and continued to apply the section to the facts of the case, thus: "It must appear that the danger was so urgent and pressing at the time of the killing that it was absolutely necessary for defendant, in order to save his own life, to kill deceased; and it must also appear that deceased was the assailant, that he was making threats to hurt defendant, to injure him in some way; or if that does not appear, it would be sufficient that the slayer, the defendant, had really and in good faith endeavored to decline any further struggle, before the mortal blow was given. If that appears, it would be sufficient to justify the defendant." We cannot agree with our learned brother, "that the making of threats by the deceased to hurt the defendant, to injure him in some way," would constitute the deceased the assailant or would make such a case of necessity under the law as would justify the killing. Threats to hurt or injure the defendant in some way do not make the danger so urgent and pressing at the time of the killing as to render the killing absolutely necessary to save his own life. Besides, this statement is not entirely consistent with that portion of the charge which properly deals with the effect of words, menaces, etc. 65 *Ga.*, 430; 50 *Ga.*, 230; 25 *Ib.*, 701; 57 *Ga.*, 184, 187.

5. A careful examination of this record satisfies us that this prisoner has had a fair and impartial trial, in which all of his rights have been fully accorded; that the law has been most benignantly administered, and that the evidence fully sustains the verdict which has been rendered.

Judgment affirmed.