WEEKS *vs.* THE STATE OF GEORGIA.

1. The rejection of testimony, admissible or inadmissible, which has no probative value whatever, is not cause for a new trial. This applies to a declaration made by the prisoner that deceased had fallen, the declaration being founded, not on knowledge, but on inference.

2. The indictment charging that the homicide was committed by means of a blow on the head with a bottle, without specifying any part of the head as the seat of the wound, and the evidence establishing with certainty a wound on the front of the head inflicted by striking with a bottle, and tending, though dubiously, to establish a wound on the back of the head occasioned either by being knocked down with the bottle when the former wound was inflicted, or by afterwards and elsewhere falling out of a wagon, the court was under no duty to instruct the jury at the prisoner's request that he should be acquitted if the death resulted from the wound on the back of the head, or if it did not result from that on the front of the head. It was not the province of the court to locate the position of either wound, or to assume it as located by the evidence, or to intimate that one wound rather than the other was caused by the blow with the bottle. Moreover, the instructions on this subject given in the general charge were sufficient; the same being, in substance, that if death did not result

from the wound inflicted by the prisoner, but from some other cause, the prisoner could not be convicted.

3. Where two physicians testify, each that he examined for wounds of the head, one saying that there was a fracture in a given position, and the other that there was no such fracture, and that if there had been he would have discovered it, the testimony of both is positive, and the rule of comparative value as between positive and negative evidence does not apply.

4. A mind swayed by a sudden impulse of passion, especially when inflamed also by whiskey, may resolve, execute and repent almost in the same moment. A man may form the intent to kill, do the killing instantly, and regret the deed as soon as done.

5. Intention is often more strongly indicated by the main act than by its adjuncts. The killing of a human being with an instrument likely to produce death, is a stupendous fact as a guide to intention.

6. The plaintiff in error was lawfully convicted of the offence of voluntary manslaughter.

7. Newly discovered evidence, without the requisite affidavits of party and counsel, need not be considered.

March 18, 1887.

Evidence. Criminal Law. Charge of Court. Before Judge MARSHALL J. CLARKE. Fulton Superior Court. September Term, 1886.

C. C. Weeks was indicted for the murder of Nash. The evidence on behalf of the State showed, in brief, as follows: On May 1, 1886, Weeks, Nash, Moore and Masters started from Atlanta to their homes in Dekalb county, riding together in wagons. When near the dividing line between the counties of Fulton and Dekalb, the wagon in which Nash was stopped. All of the party had been drinking, but Nash and Masters appeared to be drunk. Nash got out and started off. Masters followed, took from him a bottle of whiskey and tried to get him back in the wagon. Nash resisted and finally got off his coat and hat; Masters tried to get him to put them on, and the two pushed each other about. Nash seemed to be angry and was cursing. Moore also got out and attempted to get Nash back, but failing, returned to the wagon himself. Then Weeks got

out, taking with him a quart bottle nearly full of whiskey, holding it by the neck. The witnesses for the State did not hear what passed between him and Nash, but directly they started towards each other, Nash popping his hands. When about ten feet apart, Weeks threw the bottle and it struck Nash in the temple, knocking him down. Weeks then went to a neighboring house and asked for camphor and assisted in bathing Nash's head and getting him into the wagon. Subsequently Nash died. A physician, who examined the wound, testified that the skull was crushed so that he put his finger into the wound and took out a piece of the bone; that he made a careful examination both before and after Nash's death, and there was no other wound on the head; if there had been, he would have discovered it; that, in his opinion, death resulted from the wound in the temple; and that a quart bottle of whiskey was a weapon likely to produce death if thrown against the temple, though it would not probably do so if it struck some other part of the body.

The deputy sheriff testified that after the death of Nash, Weeks was arrested in Dekalb county, and the witness went to take him in custody and bring him to Fulton; that he asked Weeks how he came to get into the unfortunate difficulty, and Weeks replied that it was a drunken row; witness asked if Nash was coming towards him with a knife, pistol or anything, and Weeks replied no; witness asked how he came to strike Nash, and Weeks replied, "Well, he threatened to whip me"; also that he regretted it very much and had no idea of killing Nash.

The evidence for the defendant was, in brief, as follows: Nash and Weeks and Weeks and Moore were brothers-in-law. The former two lived together and were on friendly terms. In the wagon Nash was very drunk and rolled about. He put his foot over the side, so that there was danger of the wheel's striking him. Masters communicated this to Moore, who was driving, and Moore stopped. Nash thereupon got out and said he was going back to town.

Masters and Moore endeavored to persuade him to return to the wagon, but failed. Finally Weeks said, "Mr. Nash, get into the wagon, or I will make you do it." Nash responded, "Make me if you can." Weeks got out and both started towards the rear end as if to meet there. Weeks threw the bottle across the rear portion of the wagon, striking Nash, who fell. Weeks asked if the others thought he had hurt Nash. Masters replied that he had killed him. Weeks asked what he must do, and being told to go to a house and get camphor, went. He got no camphor, but brought water, which was poured over Nash's head. With the assistance of passers, they put Nash in the wagon and started for medical assistance. On the road, they drove into a creek, where the wheels on one side sank into the mire and could not be got out. It was then after dark. All except Nash went to the mules and tried to urge them forward. Weeks went to the back end of the wagon and called Moore to come. He went and found Nash lying in the creek, having fallen or got out of the wagon. They carried him to a dry spot on the bank, unhitched the mules and went for medical assistance. There were some rocks in the road-bed, put there to keep wheels from sinking. A physician testified that he examined Nash and discovered, in addition to the wound in the temple, a wound in the back of the head where the skull had been fractured; that although the skin had not been cut, the skull yielded to pressure of the finger and blood and brains exuded from the wound in front; and that, in his opinion, the wound in the back of the head was more likely to produce death than that in the temple, although he could not say that the latter might not have produced death.

Other testimony was introduced to show that Nash, when drunk, was of a violent disposition; that Weeks' character was peaceable; and that Nash had a pocketknife when he started from home that morning, which he had whetted in the presence of Weeks. In his statement, Weeks said that he knew the disposition of Nash when

under the influence of liquor; that when he started to persuade Nash to get back into the wagon and Nash started towards him, he saw the expression on Nash's face; that he knew that, when drunk, Nash's whole desire was his knife; that Nash reached in his pocket and defendant threw the bottle to prevent his getting to him, and without any intention of its having the effect it did.

The jury found the defendant guilty of manslaughter, and upon the refusal of a new trial, he excepted.

AUSTIN & BLACKBURN; T. W. LATHAM; A. H. COX; S. B. SPENCER, for plaintiff in error.

C. D. HILL, solicitor-general, for the State.

BLECKLEY, Chief Justice.

Weeks was indicted and tried for the murder of Nash. He was convicted of voluntary manslaughter. The indictment alleged that the killing was by striking the deceased on the head with a bottle. The evidence showed that the bottle was thrown at Nash, struck him on the front of the head and knocked him down, and that he fell on his back in the road. This occurred before sundown. Weeks, with other persons present, put the wounded man in a wagon and moved off along the road. They came to a creek. It was then dark. They mired down and were detained in the creek for a considerable length of time. While there, Weeks called out to Moore, and said, "Come here; he has fallen into the creek." This evidence, "He has fallen into the creek," was objected to, and was excluded by the court.

1. The incidents at the creek were brought out altogether by the accused. The State did not go into them. The theory of the defence was, that the mortal wound was in the back of the head; and it was sought to show that this occurred by the fall out of the wagon into the creek, where there were some stones in the channel; and it was

suggested that Nash probably fell upon the stones and that his skull was fractured in the back of the head. The circumstances, as detailed by the witness, Moore, show that Weeks, when he exclaimed, "He has fallen into the creek," did not know the fact, but it was a matter of inference on his part; and this further appears from the prisoner's statement, because he says, "I went back and saw that the deceased had fallen, or got out of the wagon. I do not know how he got out, but he was lying in the creek. I did not know how he got out. I said, 'Mr. Moore, come here and help me get him out; he has fallen into the creek.'" Whether this declaration was admissible or not, its exclusion was of no consequence. It is of doubtful admissibility, because it was no part of the *res gestæ* of the main transaction, the throwing of the bottle, and the inflicting of the wound with the bottle. The rejection of testimony, admissible or inadmissible, which has no probative value whatever, is not cause for a new trial. This applies to a declaration made by the prisoner that deceased had fallen, the declaration being founded, not on knowledge, but on inference.

2. The indictment charged that the homicide was committed by striking on the head with a bottle. It did not specify any part of the head as stricken. Upon the trial, the prisoner requested the court to charge that if death resulted from the wound on the back of the head, and did not result from the wound on the front of the head, the verdict must be not guilty. The court had no guide in the indictment by which to determine where the wound was. To ascertain the fact, it was necessary to look to the evidence; and of course the jury had to deal with the evidence and determine where to locate the wound. The court could not do that. If there were two wounds, one inflicted with the bottle and the other not, for the court to have instructed the jury that either one of those wounds was produced by the bottle, locating its position on the head, the court would necessarily have acted upon the evi-

dence, and virtually determined, from the evidence, that one or the other of the blows was inflicted with the bottle, and the other not: The court therefore did right to refuse that request.

The indictment charging that the homicide was committed by means of a blow on the head with a bottle, without specifying any part of the head as the seat of the wound, and the evidence establishing with certainty a wound on the front of the·head inflicted by striking with a bottle, and tending, though dubiously, to establish a wound on the back of the head occasioned either by being knocked down with the bottle when the former wound was inflicted, or by afterwards and elsewhere falling out of a wagon, the court was under no duty to instruct the jury at the prisoner's request that he should be acquitted if the death resulted from the wound on the back of the head, or if it did not result from that on the front of the head. It was not the province of the court to locate the position of either wound, or to assume it as located by the evidence, or to intimate that one wound rather than the other was caused by the blow with the bottle. Moreover, the instructions on this subject given in the general charge were sufficient, the same being, in substance, that if death did not result from the wound inflicted by the prisoner, but from some other cause, the prisoner could not be convicted.

3. The fact of a wound on the back of the head was very uncertain. Two physicians were examined as witnesses. One of them testified that he examined the whole head carefully, and that there was no wound on the back of it; if there had been, he would certainly have discovered it. The other testified that he examined the back of the head and there was a wound upon it, and one which he thought was more likely to have produced the death than the one on the front.

The prisoner requested the court to charge the usual rule with reference to the relative value of positive and

negative testimony, and sought to apply that rule to the testimony of these two witnesses. We think it was not applicable. Where two physicians testify, each that he examined for wounds of the head, one saying that there was a fracture in a given position, and the other that there was no such fracture, and that if there had been, he would have discovered it, the testimony of both is positive, and the rule of comparative value as between positive and negative evidence does not apply.

4. The motion for a new trial contains the usual grounds, among others, that the verdict was contrary to evidence, contrary to law, etc. The testimony has been scrutinized, and we think it is quite sufficient to warrant the conviction. The main matter relied upon, or at least one of the main matters, was that these parties were friends, brothers-in-law; that there was no ill feeling between them, and the moment the unfortunate blow was stricken, the accused rushed forward and did all he could to repair the consequences; went for camphor, and brought water, and washed and tenderly nursed and cared for the deceased; and it is contended that the killing was altogether involuntary, and if any offence was committed, it must have been the offence of involuntary manslaughter in the commission either of an unlawful or of a lawful act. But the testimony shows that the bottle was a quart bottle, a heavy bottle,. full or almost full of. whiskey, and it was thrown under circumstances that furnished no justification whatever. The testimony shows that it was an instrument likely to produce death if it struck on certain parts of the head, and on one of these parts it did strike. The wound was a fracture, going into and breaking the skull, and enabling the physician, who examined it, to introduce his finger and take out a piece of the bone. These facts, taken all together, show that while it was a sudden killing, a sudden act, yet it was probably an intentional killing. Judging the prisoner by his act, it was intentional. The jury inferred intention from the facts, and we think they

were warranted in doing so. A mind swayed by a sudden impulse of passion, especially when inflamed also by whiskey, may resolve, execute and repent almost in the same moment. A man may form the intent to kill, do the killing instantly, and regret the deed as soon as done.

5. Intention is often more strongly indicated by the main act than by its adjuncts. The killing of a human being with an instrument likely to produce death, is a stupendous fact as a guide to intention.

6. The plaintiff in error was lawfully convicted of the offence of voluntary manslaughter.

7. One of the grounds of the motion for a new trial was newly discovered evidence. The evidence was cumulative, and it was by two witnesses who were examined on behalf of the defendant at the trial. Moreover, there is no affidavit in the record that the defendant did not know of this evidence; and only one of his counsel out of three made affidavit of ignorance. Newly discovered evidence, without the requisite affidavits of party and counsel, need not be considered.

Judgment affirmed.