27615. BRADBERRY *v.* LUMBERMEN'S MUTUAL CASUALTY COMPANY *et al.*

DECIDED SEPTEMBER 11, 1939.

*J. N. Rainey,* for plaintiff.  *Robert L. Russell,* for defendants.

FELTON, J.  Jack Bradberry claimed compensation for an injury to his leg, alleged to have been caused by an accident in which a block of ice fell on him.  The deputy director granted compensation.  The Industrial Board, on appeal, denied it.  The superior court affirmed the award of the board and the claimant excepted.  It was admitted on the part of the carrier that the injury arose out of and in the course of employment.

Dr. W. L. Mathews testified, in substance, that he treated the claimant for the injury; that on the date of the injury claimant was suffering so much pain that he did not make a very thorough examination; that he sent him to the hospital in Athens for an x-ray; that he treated him for several days; that the claimant showed signs of severe contusions in the pelvis, but the x-ray was negative for fracture; that he had no means of determining whether there was a nerve involvement; that he examined the claimant last on October 5, and then found no objective symptoms, but the claimant complained of being unable to use the leg or put his foot down on the floor; that there were no external manifestations; that he saw no reason why the claimant should not go back to work; and that maximum improvement had been made, in so far as he was able to treat the claimant.

B. B. Bradberry, the father of the claimant, testified, in substance, that his son was nineteen years old, and lived in the house with him; that until his injury the claimant had been robust and in good health; that since the injury his health had not been good; that he would wake at night, and would groan in his sleep, and was otherwise very nervous; that when he tried to help in one or two jobs, his face would flush as if he had vertigo and swimming in the head; and that he would have to sit down and rest after a few minutes work.  Jack Bradberry, the claimant, testified, in substance, that after being treated by Dr. Mathews he was sent to the hospital in Atlanta, where they gave him only a purgative; that he was in the hospital in Atlanta for two or three days; that Dr. Newberry told him in Atlanta that he thought maximum recovery had been reached; that at present his leg felt tight, and it seemed as if something wanted to push his toe up instead of letting it

down; that the only way he could get his heel to the floor was by a conscious effort, attendant with pain; that his knee was stiff; that he could do no work without having hot flashes; and that he did not think there had been any improvement in his leg since the injury.

Dr. R. E. Newberry testified, in substance, that he first saw the claimant on September 2, 1937; that his chief complaints were of constant headache and pains along the course of his right sciatic nerve; that he gave a history of having bled from the left ear and nose following the accident; that the essential organs were negative for disease or injury; that the pelvis and lumbar spine were negative for disease or injury; that the x-ray of the skull was negative for bone injury; that witness saw claimant on October 11, 1937, and believed at that time that the maximum recovery had been reached and that claimant was able to go back to work, and according to his best recollection claimant stated that he was willing if he could find something to do; that claimant had no permanent disability as a result of the injury; and that his physical condition was good at the time of his dismissal by the witness. Dr. L. P. Pharr testified, in substance, that he examined the claimant in December after his injury, at which time he was complaining of headaches and nervousness; that witness found that the claimant had high blood pressure; that his nerve reflexes were exaggerated; that he did not put his heel down or his toe up; that the tendon Achilles seemed to be contracted; that about three weeks before the hearing he noticed that the claimant still did not put his heel down; that witness was of the opinion that there was an injury to the nerve supply, and that it would cause a 50 per cent. disability; and that he had seen no x-rays of the claimant's leg, but thought the boy had a definite incapacity.

Dr. C. W. Roberts, a disinterested physician for the Industrial Board, reported, in substance, that the claimant is a well-developed and healthy young man; that the vital organs, heart, and lungs, the blood pressure, urine examination, temperature, pulse, respiration, muscular development, and organic nervous system present no deviation from an essential normal; that when claimant walks he leans to the left, keeping the right knee partially flexed and walks on the toes of his right foot; that, standing, he keeps the right hip higher than the left, with a resulting convexity in the spine to the

left, with the right leg partially drawn up; that bending exercises in the back in all directions are through a normal range without complaint of pain; that there is a slight swaying from side to side on standing with the eyes closed, but the finger-to-nose test is normal; the measurements of the extremities on the two sides are equal, with equal knee-jerks, and with a negative Babinski; that the right leg shows no sign of scarring or external injury; that the motions in the right ankle joint, knee joint, and right hip are through a normal range; that there is voluntary power in the muscles of the right leg, so that he raises the leg from the table, but is apparently unable to straighten the leg at the knee; that when an effort is made to straighten the leg the claimant lacks about ten degrees in complete extension, and at such time the hamstring muscles appear very tight, and all the muscles of the leg appear to be held in a state of spasticity; that careful palpation of the back of the head and back shows no deformity and no scarring; that the physical examination failed to disclose any objective evidence of injury; that an examination of the right leg failed to disclose any satisfactory explanation of the spasticity above mentioned; that all the other complaints are of a subjective type, and appear to have their origin in a psychoneurotic state; that in the opinion of the witness the symptoms complained of and the physical changes noted in this testimony resulted from an abnormal response in the nervous mechanism to the claimant's injury; that in the opinion of the witness the injury resulted in no organic change in the tissues of the leg, hip, back, head, or brain, but that all the symptoms, both objective and subjective, have their origin in psychoneurosis; that the only sequela that he is able to discover lies in the field of a functional disorder which is in the form of a defense mechanism, and results from an imbalance between the subconscious and the conscious mental mechanisms; that from the standpoint of physical change the witness does not consider that the claimant is incapacitated for competitive work; and that if the functional neurosis is considered and taken into account, it can not be denied that the claimant is incapacitated and unable to do competitive work.

The plaintiff, recognizing the rule that an award supported by any evidence will not be disturbed in this court, insists that there was no legal evidence upon which an award denying compensation

could be based, on the theory that the claimant's testimony as to his injury was positive, and that of the physicians was opinion or circumstantial evidence, and that the claimant's testimony was consistent with the circumstantial evidence, and not contradictory thereto. We do not agree to this contention, for the reason that the claimant's testimony as to a permanent injury does not reach the standard of direct testimony. His testimony to the effect that his leg pained him was direct, but his testimony to the effect that he could not work, or that the injury was permanent was a conclusion or opinion which the fact-finding body was authorized to reject in view of the opinion evidence of the physicians. The evidence authorized the finding that there was no actual permanent physical injury. Negative testimony may be accepted in preference to positive. *Pollard* v. *Gorman*, 52 *Ga. App.* 127 (182 S. E. 678); *Georgia Railroad & Banking Co.* v. *Wallis*, 29 *Ga. App.* 706 (116 S. E. 883); *Western & Atlantic Railroad Co.* v. *Mallett*, 23 *Ga. App.* 367 (98 S. E. 238). The testimony of physicians who examined the claimant, to the effect that they found no objective symptoms of an injury was positive as to that fact. *Weeks* v. *State*, 79 *Ga.* 36 (3). Thus a finding was authorized that there was no physical injury at the time of the hearing, the evidence of the physicians being positive on that subject, and accepted by the board. All the testimony on the subject of the psychoneurotic condition of the claimant was opinion evidence; and the board was authorized to find against compensation. The probability of the truth of the testimony and the weight of the testimony in such cases are peculiarly matters solely for the fact-finding body to determine. Certain cases are cited, to the effect that hypothetical opinions of experts may not be accepted which contradict unimpeached positive testimony. They have no bearing on this case, because, as to the absence of physical injury, the testimony of the physicians is positive; and as to the psychological injury, so to speak, there is no direct testimony. The claimant's testimony that his leg hurt is positive, but his testimony that he is permanently incapacitated for work is only an opinion; so as to the vital question in the case we have only opinion testimony on both sides. The evidence authorized the denial of compensation, and the judge of the superior court did not err in affirming the award of the board.

*Judgment affirmed. Stephens, P. J., and Sutton, J., concur.*