## BROWN *v.* THE STATE.

No. 13188. April 11, 1940.

*Frank Hardeman* and *W. W. Abbot Jr.,* for plaintiff in error.

*Ellis G. Arnall, attorney-general, W. H. Lanier, solicitor-general,* and *Herschel E. Smith, assistant attorney-general,* contra.

DUCKWORTH, Justice. Robert Brown was indicted and tried for murder of Keelon Thompson by shooting him with a shotgun. The jury returned a verdict of guilty, without recommendation, and the defendant was sentenced to be electrocuted. A motion for new trial was overruled, and the movant excepted. The killing occurred on Saturday night, July 29, 1939, at a little store, or "beer joint" (as it was referred to by the witnesses), located about half way between Avera and Stapleton, in Jefferson County. The store was owned by the deceased. About nine o'clock that night, the defendant, a negro, entered the store with a half gallon jar partly filled with liquor. He had been drinking, and was "about half drunk or a little over." Either the deceased or his employee, Rufus Sheppard, ordered the defendant to leave the store with the liquor; and when the defendant paid no attention to this order, the deceased struck the defendant with a club and forced him to leave. In the scuffle the defendant attempted to get his pocket-knife, but did not use it. When the defendant had left the store and was going down the road toward his home, Rufus Sheppard shot over his head with a shotgun, apparently for the purpose of frightening the negro. When the gun was fired, the defendant said he would be back directly and get them. He went to his home, got his shotgun, and then went to Stapleton and bought some shells for the gun. He walked back to the store, a distance of two miles, and from the doorway, without warning, killed Thompson by shooting him in the chest while he was sitting on a cot. The defendant then ran toward his home. He was in bed, apparently drunk, when he was arrested about an hour later. The foregoing facts appeared from the evidence for the State. In his statement the defendant admitted that the series of events was substantially correct up to the time he left Stapleton after buying the shells. He said that he had been drinking a great deal, and his mind went blank at this point, and that he did not remember anything else that happened that night. The State, in rebuttal, introduced testimony of the sheriff, to the effect that the defendant told him that he was not

drunk that night, but that he killed Thompson because he could not stand "to be run over like he was." The general grounds and the first special ground of the motion for a new trial have been abandoned, and will not be considered.

■ Three excerpts from the charge to the jury are assigned as error, chiefly because they are alleged to have had the effect of prejudicing the defendant's right to have the jury recommend life imprisonment if they found him guilty of murder. In ground 2 error is assigned on the following instruction on the subject of express malice: "Well, as very distinguished counsel in conclusion very wisely said, we have never been able, as far as we have gone in this old world, we have never been able to delve into the human mind and to read like you would a book what is in there; we have never yet been able to look down into the human heart and find all of its feelings and sentiments and things of that kind. No, we judge men by what? What they do, their actions, their conduct, their words. Those are external circumstances that are brought here for the jury, for your consideration, for you to determine whether or not these external circumstances, the conduct of the parties, the acts of the party, the words of the party, whatever they may be; yet if these external circumstances satisfy your minds that he entertained an unlawful intent to take human life, and took it when there was no legal justification or mitigation for his act, then that would be done with malice, express malice, that which is capable of proof by external circumstances." The court, after defining express malice as the deliberate intention unlawfully to take human life, which may be manifested by external circumstances capable of proof (Code, § 26-1003), used the quoted language as further explanation of that definition. It appears from the record that one of the attorneys for the defendant in his concluding argument to the jury had used the statement credited to him in pleading for a recommendation of life imprisonment. It is contended that in these circumstances the effect of this charge was to rebut the argument of the defendant's attorney, and that the charge was argumentative and prejudicial. The charge, however, does not seem to have been intended as a reply to the argument of the attorney. The court stated that it is impossible to read another person's mind, in order to explain the necessity of showing express malice by external circumstances. The defendant's attorney did

not use this statement in the same connection, but used it in connection with his argument on the question of punishment. The statement as used in the charge was entirely disassociated from the statement as used in the argument, and it can not be said that the statement had the effect of replying to and rebutting the argument. For the same reasons, the charge is not subject to the objection that it confined too narrowly the things which the jury might consider on the question of punishment. The things mentioned in the charge as examples of external circumstances to show express malice did not purport to deal with the question of punishment, and they were not so stated as to mislead and prejudice the jury in that respect.

■ In charging on the subject of malice aforethought, the court stated: "Well, I said malice aforethought. I have heard people very often say that that word aforethought means that you have got to think it over, that you have got to premeditate over it. That is not it. If the evil mind exists, if the intent be there at the moment that the mortal blow is given or the fatal shot is fired, that is sufficient. *A man may be ever so innocent in his purpose, and yet form that intent, and act instantly, yet that would be malice aforethought.*" The italicized portion of this charge is complained of as erroneous, and misleading and confusing to the jury. If malice is in the mind of the slayer at the moment the killing is done, and it moves him to do the killing, no matter how short a time it may have existed, such killing constitutes murder. See *Bailey* v. *State,* 70 *Ga.* 617 (2) ; *Malone* v. *State,* 77 *Ga.* 767 (3) ; *Weeks* v. *State,* 79 *Ga.* 36 (4) (3 S. E. 323) ; *Godbee* v. *State,* 141 *Ga.* 515 (4) (81 S. E. 876). While the sentence excepted to may have contained some inapt language, and, standing alone, might have been confusing to the jury, yet we think that the charge, when considered as a whole, correctly stated the rule with reference to malice aforethought, and that the sentence excepted to did not render it misleading.

■ Error is assigned on the following charge with reference to the right of the jury to recommend life imprisonment: "In the event you find him guilty of murder, it is entirely discretionary with the jury, you may without rhyme or reason recommend him to the mercy of the court, in which event your verdict would be, 'We, the jury, find the defendant guilty and recommend life im-

prisonment;' in which event that would be the punishment." There is no merit in the contention that this charge is so expressed as to limit the jury's right to recommend life imprisonment by requiring them to find some basis or reason for such mercy. Under the charge the jury were left entirely free to use their discretion in fixing the punishment, and the charge is not so expressed as to intimate that the jury would be "fools" if they should recommend life imprisonment, as contended by the defendant. See *Wheat* v. *State,* 187 *Ga.* 480 (3) (1 S. E. 2d, 1); *Mims* v. *State,* 188 *Ga.* 702 (5) (4 S. E. 2d, 831). The exceptions being without merit, the court did not err in overruling the motion for new trial.

*Judgment affirmed. All the Justices concur.*