The judge of the superior court did not err in affirming the award of the State Board of Workmen's Compensation.
 DECIDED JULY 10, 1946.
W. J. Stapleton filed his claim for compensation, with the State Board of Workmen's Compensation, against J. A. Jones Construction Company, as employer, and American Mutual Liability Insurance Company, as the insurance carrier. Upon the trial of the case, the hearing director rendered a decision in favor of the defendants and dismissed the claim. That decision was affirmed by the full board, the award of that board was affirmed by the judge of the superior court, and that judgment is assigned as error.
The hearing director made the following findings of fact and award: "From a careful study of all the evidence, I find as a matter of fact that claimant did not sustain an accidental injury which arose out of and in the course of his employment May 3, 1944; that any injury which claimant sustained May 3, 1944, resulted from a giving away of the right hip; that this weakened *Page 87 
condition in his hip existed prior to May 3, 1944; and that the alleged accident of May 3, 1944, in no way or manner aggravated the pre-existing physical condition of claimant.
"Some of the testimony of claimant, as well as that of some of the witnesses, is of such interest that I am quoting portions of it as follows: "On page 2 of the transcript of hearing held December 7, 1944, claimant testified in part: `Q. Did any accident happen to you? A. Yes, sir, I went to get up and something caught my foot, caught on something and throwed me and tripped me backwards. Q. What were you doing at the time you went to get up? A. I was putting them little bolts in them little hangers, what they put around the pipe to hold them from the side of the boat.'
"On page 5 of the transcript of evidence of the hearing held December 7, 1944, claimant further testified: `Q. How long did you have to stay in your house on account of these injuries? A. I ain't struck a lick since the 3rd day of May. Q. Have you been more or less confined to your house since then? A. Yes, sir, might nigh all the time. Q. Prior to the injury, Mr. Stapleton, did you enjoy good health? A. Yes, sir, I enjoyed good health, never have taken no doctor's medicine in forty-five years.'
"On page 9 of the transcript of evidence of the hearing held December 7, 1944, claimant testified on cross-examination in part as follows: `Q. Did you ever work for a railroad? A. Yes, sir, I worked with the railroad. Q. When was that? A. I worked in Waycross, and after four or five months after I come down here and fell in the shipyard I tried to work around here on this railroad and I couldn't make it. Mr. Knight said he would have to let me go. Q. What railroad? A. Coast Line, he said he couldn't work me. Q. You worked for the Coast Line after you got hurt here? A. I tried to work for the Coast Line. Q. When did you go to work for the Coast Line? A. It was about four months after I got off the crutches, about four or four and one-half months, I can't tell you exactly the day I went to work out there, Mr. Knight can. Q. Do you remember his initials? A. Section foreman, Coast Line. He lives around there on Newcastle Street. Q. You worked for the Coast Line here in Brunswick? A. I tried to, they wouldn't work me. Q. Did they pay you anything? A. They paid me a little bit, what I stayed out there. Q. How many payrolls did you have, how many pay checks did *Page 88 
you receive? A. I received half of one. Q. One half of one? A. Yes, sir, I couldn't hold out to work. Q. How much was it for? A. They were paying me fifty-seven cents an hour. Q. How much did you draw on the one payroll you met? A. I couldn't tell you now, I never paid no attention to it. Q. What period of time did it cover? A. I can't tell you that, what day. I ain't going to tell you because I don't know. Q. Have you worked anywhere else since you left the shipyard except the Coast Line? A. Yes, sir. Q. Where else? A. I tried to. Q. Where did you try to work? A. I went over to Moultrie. Q. Who did you try to work for there? A. I can't tell you what the name of the company is, I got the card right here. (Witness hands card to attorney Greene.) Q. That is the Moultrie Cotton Mills? A. Yes, sir. Q. How long did you work there? A. I didn't stay in there two hours. Q. Did you go all the way to Moultrie? A. I thought maybe I could find something I could do. Q. And just went over there and worked three hours and came back? A. I didn't make three hours. After he saw the way I was getting down and having to bend, he come to me and told me, "No, I can't work you in here, I am not going to be responsible for your life."'
"On page 2 of the transcript of evidence of hearing held January 12, 1944, Mrs. M. T. Porter testified in part as follows: `Q. Now, during the time that you were making an X-ray of Mr. Stapleton, did you have any conversation with him? A. Usually, when making pictures you ask them how they got hurt and get what information you can about that. I asked Mr. Stapleton how he got hurt, and he said that he fell and then he went on and volunteered the statement that he had fallen that morning before he left home, and his wife asked him not to come to work but he insisted on coming and did. Q. Did you [he?] tell you the reason why he fell and what caused his hip to make him fall? A. His hip just gives away at times, was his statement that he made.'
"On page 3 of the transcript of evidence of hearing held January 12, 1944, Mrs. M. T. Porter further testified in part: `Q. I will ask you whether or not the card which you have in your hand is the original clinic card on W. J. Stapleton? A. It is. Q. And on that card does anything appear in your own handwriting? A. This in pencil here is my writing. Q. Read it. A. Gives history *Page 89 
of chronic trouble to hip, falls at intervals without any warning, and then the X-ray number. . . Q. What was the conversation further; you said something about his wife asking him not to? A. He said she asked him not to come to work that morning. Q. Did he give any reason why she asked him not to? A. He said he felt badly and he had fallen, and she had asked him not to come to work.'
"The burden of proof was upon the claimant to show that the accident arose both out of and in the course of his employment. Before an employee can recover compensation for an injury, he must prove to the satisfaction of the board that the disability resulted from an accident which arose both out of and in the course of his employment. It is not sufficient that the employee establish proof that the disability resulted from an accident which arose out of his employment alone, or that the disability resulted from an accident which arose in the course of his employment only. The two factors, namely, (1) that it arose out of, and (2) in the course of the employment, must be definitely established together. Proof of one factor without establishing proof of the other is insufficient.
"A careful examination and consideration of all the evidence adduced at the hearings in this case, together with the report of Dr. Sandison, warrants the finding of fact that the disability which claimant alleges he is suffering from as a result of an accident which occurred May 3, 1944, did not arise both out of and in the course of his employment. On the contrary, the evidence is, to my way of thinking, sufficient to warrant the finding of fact that any injury or disability suffered by claimant resulted directly from a pre-existing physical condition, and that the injury or disability resulted from a giving away of claimant's hip which caused the fall.
"Accordingly, I find as a matter of fact that while the accidental injury complained of arose in the course of claimant's employment [it was not?] a contributing proximate cause of the accident. On the contrary, I find that the accident was a direct result of a pre-existing physical weakness of claimant's right hip. The evidence is sufficient to authorize a finding that claimant did not stumble or trip over any obstacle or substance of any kind which caused claimant to be thrown backwards against a pile of iron, as alleged, but on the contrary the evidence warrants the finding of fact that *Page 90 
the accident resulted from the giving away of claimant's hip; that this giving away or weakness of the hip was a pre-existing condition; and that claimant's employment in no way or manner contributed directly or indirectly to the accident.
"The claimant testified that previous to May 3, 1944, he enjoyed good health, and, as a matter of fact, had taken no doctor's medicine in forty-five years, but that since May 3, 1944, he hadn't struck a lick of work. This testimony of claimant is contradicted by claimant's testimony on cross-examination that since May 3, 1944, he worked for the Coast Line Railroad in Brunswick and later sought work at the Moultrie Cotton Mills, Moultrie, Georgia, although he limited his time of employment with the Moultrie Cotton Mills to within three hours. Claimant's testimony is further contradicted by the testimony of Mrs. M. T. Porter, who testified that claimant informed her on May 3, 1944, that on occasions his hip just gave away, and that only that morning he had fallen at his home and his wife had requested that he remain home and not go to work. Claimant's testimony is still further contradicted by his admission on cross-examination that he was out sick three weeks in March, 1944. It is further contradicted by the testimony of F. L. Hutto, who testified that when claimant returned to work after having been off sick in March, 1944, he had a cough and witness sent him back home to recuperate, after which he again returned to work. It is still further contradicted by the testimony of J. D. Brett, who testified that when claimant returned to the plant, after having been off sick with the flu, claimant made a statement to the witness to the effect that he had caught the flu and it had settled in his hip. I have carefully considered the report of Dr. Sandison, but find as a matter of fact that it is largely predicated on the history as given the doctor by claimant.
"The claimant has failed to carry the burden of proof that the accident complained of arose both out of and in the course of his employment.
 "Award
"Wherefore, based upon the above and foregoing findings of fact, it is the award of this director that claimant's claim for compensation be denied."
In our opinion, the judge of the superior court did not err in affirming the award of the full board. In Liberty Mutual Ins. Co. v.Blackshear, 197 Ga. 334, 336 (28 S.E.2d 860), the court said: "Upon an appeal to the superior court from any final award or other final decision of the Industrial Board, the findings of fact made by the board within its power are, in the absence of fraud, conclusive if they are supported by any competent evidence. Code, § 114-710; Maryland Casualty Co. v. England,160 Ga. 810, 812 (129 S.E. 75); London Guarantee Co. v.Boynton, 54 Ga. App. 419 (2), 423 (188 S.E. 265); Ga. PowerCo. v. Patterson, 46 Ga. App. 7, 8 (166 S.E. 255), and cit.; United States Fidelity c. Co. v. Price, 38 Ga. App. 346
(144 S.E. 146); United States Fidelity c. Co. v.Christian, 35 Ga. App. 326 (3) (133 S.E. 639). In such a case not only may an issue of fact arise from contradictory evidence, but contrary implications consistent with the testimony may arise from the proved facts; and in still other ways the question of what is the truth may remain an issue of fact despite uncontradicted evidence in regard thereto. Cooper v.Lumbermen's Mutual Casualty Co., 179 Ga. 256, 261
(175 S.E. 577). In order to render any finding of fact demanded as a matter of law, not only must there be no controversy in the evidence material to the issue involved, but the implications and inferences which logically and properly arise from the evidence must necessarily lead to only the one conclusion." See, to the same effect, Davis v. American Mutual Liability Ins. Co.,72 Ga. App. 783 (1, 2, 3) (35 S.E.2d 203); American MutualLiability Ins. Co. v. Brackin, 68 Ga. App. 256 (23 S.E.2d 505); Bradberry v. Lumbermen's Mut. Cas. Co., 60 Ga. App. 576
(4 S.E.2d 486).
Furthermore, it is well settled law that this court, in reviewing an award by the full board denying compensation, must accept that evidence most favorable to the employer; and if, so viewed, it authorizes an award denying compensation, the award must be affirmed. Glens Falls Indemnity Co. v. Sockwell,58 Ga. App. 111, 114 (197 S.E. 647); Merry Brothers Co. v.Holmes, 57 Ga. App. 281 (195 S.E. 223). It is also well settled that "in cases of this kind the burden of proof is on the claimant to establish the fact that he has sustained an accidental injury such as is contemplated by the Workmen's Compensation Act. The Industrial Board found *Page 92 
as a fact that this burden had not been carried by the claimant. This finding is binding on all courts when there is evidence in the record to support it." American Mutual Liability Co. v.Harden, 64 Ga. App. 593, 595 (13 S.E.2d 685).
The cases cited in behalf of the claimant are distinguished by their facts from this case.
Judgment affirmed. All the Judges concur, except MacIntyreand Parker, J J., who dissent.