43601. GEORGIA CASUALTY & SURETY COMPANY et al. v. MILLS.

Eberhardt, Judge. Where the medical evidence was conflicting as to whether a moderate brain concussion received when the employee fell from a truck aggravated a pre-existing cancerous condition in the lower intestines and hastened his demise, and the compensation board made its findings that the concussion was an aggravating factor and awarded compensation to the widow, the award was properly affirmed by the superior court. *Montgomery v. Maryland Cas. Co.,* 169 Ga. 746 (1) (151 SE 363); *Stapleton v. American Mutual &c. Co.,* 74 Ga. App. 86 (38 SE2d 848).

*Judgment affirmed. Bell, P. J., Jordan, P. J., Hall, Pannell,
Deen and Whitman, JJ., concur. Felton, C. J., dissents.
Quillian, J., disqualified.*

SUBMITTED MAY 6, 1968—DECIDED JUNE 24, 1968—
REHEARING DENIED JULY 23, 1968—

*Quillian & Quillian, Alfred A. Quillian,* for appellants.
*Peyton Miles,* for appellee.

FELTON, Chief Judge, dissenting. The burden of proof was
upon the widow-claimant. Her proof consisted of her testimony
and the depositions of her deceased husband's physician. The
claimant testified that her deceased husband did not complain in
her presence of pain or discomfort in the lower abdomen. The
thrust of claimant's expert witness's testimony was that the mild
concussion which the deceased husband suffered from a fall from
a pulpwood truck aggravated a pre-existing cancerous condition
involving the colon and other organs. The witness gave two
bases for his opinion: one was that the concussion weakened the
condition of the deceased employee and that as a result he died
sooner than he would have without the concussion; the other was
that the bed rest necessitated by the concussion caused addi-
tional constipation and strain which resulted in the spread of the
cancer which resulted in hastening the death of the deceased
employee.

The conclusion that death was hastened by the mere weakness
caused by the fall and the concussion is unwarranted in view of
the fact that two operations were performed on the deceased
after the concussion. It is beyond human gifts to determine un-
der these facts whether the concussion (mild) and the resulting
weakness even was a contributing cause of the death. Neither
is the other basis relied on by claimant's expert witness sufficient
to show that the concussion caused additional constipation,
strain, etc., which spread the cancer. The deceased suffered
from an enlarged prostate and colon trouble which caused con-
stipation before the concussion and there is no evidence that the
constipation was greater after the concussion or what the at-
tending physician prescribed for the constipation during bed

rest. Moreover, as stated, after the deceased left the hospital after the confinement for the concussion, he was admitted for an operation on the prostate and later for another operation for cancer of the colon and other organs. Under these facts the conclusion that the mild concussion in any way aggravated the cancer or accelerated the death of the employee is not supported by the facts and is purely conjectural. This is not a case in which a fact-finding body of non-experts must accept the opinion of an expert on a medical question. It still has the duty to use its intelligence and common sense in weighing the facts presented to determine whether under the facts the conclusion reached by the expert is sound, reasonable and probable, or whether it is unreasonable and a pure guess.

I also dissent because the Constitution of 1945 (*Code Ann.* § 2-3702) requires this court to designate a superior court judge to act in place of Judge Quillian, who is disqualified. The provision is mandatory. Some confusion must have arisen because of the Act of 1888 (*Code* § 24-4008), dealing with incapacity to act on a case, and not a disqualification. The ruling in *Life Ins. Co. of Ga. v. Burke,* 217 Ga. 742 (125 SE2d 48) is contrary to the requirement of the 1945 Constitution. No litigant should be deprived of a decision by a full bench unless he expressly waives it, where one or more judges are disqualified. No lawyer ought to be required to ask the court to fill a vacancy because of disqualification when the Constitution commands that the court fill it. Lawyers are often hesitant to make such a request for fear of being considered guilty of an insinuation that the qualified judges are not competent to decide the case. I am surprised that the Supreme Court several times has held that the failure to fill the disqualification spot is harmless because it was unlikely that the judgment would be changed by filling the disqualified judge's place. It is not unheard of that one judge's idea or suggestion might result in changing a judgment. The Constitution gives a party the opportunity to at least hope for such a result or at least have one vote or more in his favor.